My name is Alan Williams, and along with my learned co-counsel, Dane Miller, we represent the appellant Red Line Research Laboratories, Inc. This case can really be summed up in a very short sentence. In 1996, the Bankruptcy Court got it right. The Bankruptcy Court found, incidentally, as has every court who has looked at this matter since, that the marshal breached a statutory duty owed to Red Line. But the Bankruptcy Court, unlike the District Court, found that Red Line, in fact, was damaged by the marshal's breach, saying in 1996, the marshal is subject to liability for the amounts paid over, plus the damages provisioned, plus the interest as provided by the statute. The District Court got a hold of this, and in what appears to be a result-reaching decision, makes a conclusion, without reference to applicable California commercial law or the enforcement of judgments law, that if Union Bank had a superior security interest on the date the marshal released the money, well, then Red Line couldn't have been damaged. And if you think about this a little bit in the abstract, it really doesn't make sense. It would mean that the marshal could do anything he wanted with the money. The marshal could go out and buy himself a new boat with the money. Absolutely. I think where I try to get the apples and oranges straightened out, it's one thing following the security line. It's another thing following the marshal's actions. You may have a cause of action against the marshal because you were hurt according to your position, but that doesn't influence... I can't see how that intrudes into the UCC security line. If I read between the lines here, Union Bank had a perfected security interest in the accounts receivable that were subject to the levy that you made. Now, I cannot find where that security interest was ever destroyed. You argue waiver because of the stipulation, but there was no subordination there. All that happened was the money was gone. You didn't have anything anymore. The money, the specie, had gone into the bankruptcy court. If you would have proceeded, the trustee would have come over and grabbed it anyway, or you would have had the battle. But as it turned out, the wrongful act released the specie. Isn't that right? No. Actually, what happened was the bankruptcy court found that the money, because of the length of time it had been from the time of the levy to the time of the bankruptcy filing, the money was no longer, at the time of the bankruptcy filing, the money was not property of the bankruptcy estate. And the court can't turn a blind eye to the fact that Union Bank waived its right to receive that collateral from the marshal. The marshal had... But they also reserved any rights they had in the bankruptcy. It was a no-brainer. There's no money it spent, and all Union Bank said was, if you want to play with the sheriff, go ahead and play with the sheriff. I'm going to go over to the bankruptcy court and rake in whatever I can under my security interest because the security interest was never destroyed, as I can see. All they did is they waived any rights you may have in the third-party claim for the money that was in the hands of the sheriff at that time. It was gone by that, when he made it. The marshal had the duty, statutory duty, to hold on to the money until the third-party claim was resolved. And if it had conflicting claims to the money it couldn't resolve, it had a statutory duty to deposit the money with the court. No question. And you can take after the sheriff all you want. The problem is, when you get over on the bankruptcy side, I don't see where the security interest of Union Bank has been impaired in any way. Maybe I'm missing something. Well, basically, what we're saying here is this is akin to, you know, possibly an action for conversion. The conversion is an action against a right of possession. As between Redline and Union Bank, that really is irrelevant, first of all, to this discussion, because the issue is between Redline and the marshal. No matter what Union Bank's technical priority is, until a court of competent jurisdiction in the original state court action ruled that the money belonged to Union Bank, under the law it was Redline's money until someone divested Redline of the money. So but for the fact that Union Bank — I'm sorry, but for the fact that the marshal gave the money away, on the date that Union Bank withdrew its third-party claim, Redline would have been able to go down to the marshal's office and say, that day, give me my money. Well, maybe I misunderstand where it was. The money belonged to the judgment debtor. It had been levied upon, but there'd been no execution in taking. The money had been levied on, but you still had to litigate what was going to happen with the bankrupt and all the rest of the stuff. The money did not belong to Redline, as I understand it. Yeah, no, that's where I — Levied on it, but it's still the debtor's property. No, it was not the property of the estate. And the bankruptcy — You said the debtor. No. Well, that's the bankruptcy — that's the property of the debtor, which is the bankruptcy estate. It was — Counsel, let me ask you, what was the date of the levy and what was the date of the bankruptcy filing? The date of the levy was November of 1994, and the bankruptcy filing was in April 1995. It was outside the preference period, and the bankruptcy court found it was outside the preference period. The bankruptcy court — there's a finding in the bankruptcy court order that finds that the funds were not property of the bankruptcy estate. Bankruptcy court ruled they were not property of the estate, and so Redline had a perfected interest in the property. And this is a case between Redline and the marshal. The court and the bankruptcy court found that it should not be concerned with the rights of Union Bank, and Union Bank's rights have been settled between the parties. And what happened? What happened to the money? I mean, but for the fact that the marshal released the money, Union Bank, release of its third-party claim, would have entitled Redline to the money. And this court, nor the district court, should have been concerned with what might have happened, what Union Bank might have done. There may have been a number of reasons. As a matter of fact, there were a number of reasons why Union Bank waved off on the third-party claim besides the fact, well, the money's all gone. You want to chase the marshal? Go chase the marshal. But this court should not be concerned with that, because this is a case of a marshal's breach of duty, and the marshal had the duty to hold the funds. And remember how these funds were lost. This wasn't after — You want to save some time? Sure. I'll save — thank you. Thank you very much. Good morning, Your Honors. Judy McDonough on behalf of Michael Soba, former marshal of the County of San Diego in the Office of the County Counsel. May it please the Court, I think Judge Brunetti's question about when the levy funds were received, when the third-party claim was filed, when the bankruptcy action was filed, are all relevant to this case. The marshal received the funds on January 26, 1995. The levy had been affected in November of 1994, but unfortunately when the marshal received the funds, they were unidentified, and he had to return them to find out what the proper account was. So he received them on January 26 of 1995. All right. Is that the critical date, or is it the levy date? Well, the levy date is — the district court found that the levy date was important, because that was at the point where the levy funds were transferred. But what happened after the levy funds were received is crucial to this case, and that is that on February 8 of 1995, a third-party claim was filed on behalf of Union Bank, who held a first-priority secured interest in all of Naki's assets, the debtor. At that point in time — and that's the only time that I can remember — the red line was never anything other than the fact that they did hold that first-priority security interest. So red line was never anything more than an unsecured junior judgment creditor. So — It wasn't unsecured. It was just — it was junior to Union. I stand corrected. Thank you. So it was a junior. So until under California statute, the marshal could not release those funds until it was determined that who of the two parties, the third party or the judgment creditor, was entitled to them.  He should have held on to the funds. And unfortunately, we don't argue that that wasn't incorrect, the release of the funds. It was a confusion. It was certainly a miscommunication. What the marshal received was an order showing the judgment debtor in possession and took that to be an order from the bankruptcy court ordering the funds back to the judgment debtor in possession. So the marshal did make a Unfortunately, for red line, that mistake never damaged them. That mistake only damaged Union. I understand that, counsel, because Union gave up its priority interest. Only, as Judge Brunetti has pointed out, long after the fact, long after the operative date that red line has urged in this case. Well, but if the marshal had sat on the funds, then they eventually would have gone to red line. Well, I think that's very speculative with all due respect, Your Honor, because what happened is Union Bank was undersecured from the beginning of time with NACI. Unfortunately, when one looks at their books, and this is why red line kept urging an operative date closer and closer forward in time, because red line kept thinking, if I keep getting back further and further back, eventually we're going to find that Union Bank was oversecured, they could have marshaled the assets, and red line could have been entitled to that particular set of funds. But the reality is Union Bank was never oversecured. Well, but what effect do we give to Union's waiver? None at all. It's totally irrelevant, Your Honor. I don't understand that. Well, because the only, as Judge Brunetti pointed out, the only way that they gave any waiver at all was down the line when they said, you know, it doesn't matter. We're not going to fight this. We filed this third-party claim initially because the species was there, and it was something worth fighting over. Now that it's gone, what do we care? We own all their assets. We own anything that they have that's valuable. We have the right to, and I want to stop here because I want to make sure I'm on the right page here. I just noticed that I don't have my copy of the stipulation here, but as I remember the stipulation, the effect of the stipulation was they dismissed their third-party claim as to what was held under the levy at the time that they filed a third-party claim. As a result of the wrongful transfer, there's zero under levy, but there's a big cause of action against the sheriff. So as I read the way the stipulation says, you want to play with the sheriff? Go ahead. I don't need the sheriff because I am reserving specifically in the stipulation all my rights, which are first priority in the bankrupt state. I'm going to go over and get that $300,000, whatever is laying over there. This is why I wanted to check with you. My understanding is there's one track on the Union Bank security and there's one track on the wrongful action against the sheriff. You take either one, but if you get over on the security side, Union Bank wins every time because he never subordinated their lien or gave up their security interest as filed under the UCC, as I can see it. That's correct. That's correct. They always retained that UCC security lien, and it's certainly my understanding and my interpretation is that they never gave that up and that Union Bank just had no interest in pursuing the marshal, but they certainly could have. I mean, that was the only waiver that they gave up. So there was never any effect on their first security interest. So as a result, Redline can't step in now and say that somehow that first security interest is gone. Well, Redline ran into another disaster because of the California Code on damages that are allowed against losses that are allowed against the sheriff. If it wasn't for the California law and they didn't have to show a loss under the two sections, I'm not going to try to waste time, then we might go somewhere. But unfortunately, Redline can't show that they suffered a loss because under the circumstance that existed when the money was under levy, Union Bank was going to win. Nobody's showing that they wouldn't have because they had a prior security interest on it. That's my understanding. It just happens to be a catch-22. I mean, the sheriff has obviously done the wrong thing, but you just can't get there, it seems. So because of the California law, am I missing something in your brief? No. No. I think that's correct, except that I would say that the sheriff made a mistake, the marshal made a mistake, and the mistake affected Union Bank. I mean, that, at no time was Redline ever damaged by this because Redline never could have gotten those levied funds. No matter if their best shot at getting those levied funds was if they could have proven on the operative date which they put forward, that May 31st when the transfer occurred, that was their best shot at showing that Union Bank was oversecured. But because they never ever could have shown that, they never suffered any kind of damages. And no matter whether you're under 26680 or 2664, I believe, you either have to show that you have actual damages or that you were the person entitled to the funds. And they can't show that in either instance because Union Bank always was the person entitled to the funds, and they didn't have any damage to show. So on that basis, unless your honors have any further questions, the marshal is willing to submit them. Thank you. When Union Bank withdrew its third party claim, Redline unquestionably became the party entitled to the levy funds. But there were no funds. Because the marshal gave them away. Exactly. So you had a cause of action against the marshal. Which is why we're here. Exactly. That's why we're here. We have a cause of action and a claim against the marshal. That is exactly what we litigated in the bankruptcy court. That's exactly what we argued in the district court. And that's exactly what we're arguing here. Our action is against the marshal for the reason Redline. And that's why we're here. Redline was damaged. Now, counsel for the county made reference to Redline stipulating to an operative date. In fact, we did not stipulate to an operative date. It was part of the mandate from the district court that said, figure out what the rights of the parties were as of the date the marshal released the funds. Marshal did not give Redline any opportunity to protect its interests. The marshal did wrong here. And Redline has come before this court as it almost always is, as the court of last resort, to do what is right. Thank you very much, Your Honor. Redline submits. All right. Very well. The matter will stand submitted. We'll now go to channel communications. Thank you.
judges: B. Fletcher, Pregerson, Brunetti